UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

**PROCHNIAK WEISBERG, P.C.**
MATTHEW B. WEISBERG
7 SOUTH MORTON AVE.
MORTON, PA  19070
610-690-0801

| | |
|---|---|
| Anthony Johnson | |
| 305 Sturwood Way | |
| Lawrenceville, NJ 08648 | |
| | |
|                Plaintiff, | |
| | |
|    v. | |
| | |
| Multi-Solutions, Inc. | |
| 197 Route 18 South | |
| South Tower, Suite 3000 | |
| East Brunswick, NJ 08816 | |
| | |
|        And | |
| | |
| James Daniels | |
| 699 West Grand Avenue | CIVIL ACTION NO.: 3:08-cv-05134 |
| Rahway, NJ 07065 | |
| | |
|        And | JURY OF TWELVE (12) JURORS DEMANDED |
| | |
| Gateway Home Equity, Inc. d/b/a | |
| Gateway Funding Diversified | |
| Mortgage Services d/b/a Ivy | |
| Mortgage | |
| 300 Welsh Road, Building 5 | |
| Horsham, PA 19044 | |
| | |
|        And | |
| | |
| Carl Gensib | |
| 850-870 Route 1 North | |
| North Brunswick, NJ 08902 | |
| | |
|        And | |
| | |
| Bank of America Corporation | |
| f/k/a Countrywide Home Loans, Inc. | |
| 100 N Tryon St | |
| Charlotte, NC 28255 | |

1

|   |   |
|---|---|
| And | : |
|  | : |
| John Does, 1-10 | : |
|         Defendants. | : |

## SECOND AMENDED CIVIL ACTION COMPLAINT

### I.  Preliminary Statement

1. This is an action for an award of attorney's fees and costs, compensatory, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for Defendants' Foreclosure Rescue Scam, deed conversion, unfair or deceptive acts and practices ("UDAP"), conspiracy and/or aiding and abetting same.

2. Individually, jointly and/or severally, Defendants are liable to Plaintiff for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

3. At all times material, Plaintiff here reserves the right to rely on the "Discovery Rule" and/or the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectively.

### II.  Jurisdiction and Venue

4. Jurisdiction in this Honorable Court is based on federal question conferred by 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

5. Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle place of business, and/or does business here, and/or the subject of this action is situated within this district.

### III.  Parties

6. Plaintiff, Anthony Johnson ("Plaintiff"), is an adult individual currently residing at the above-captioned address.

7. Defendant, Multi-Solutions, Inc. ("Multi"), is a duly incorporated corporation under and by virtue of the laws of the State of New Jersey, maintaining its principle place of business at the above captioned address.

8.      Defendant, James Daniels, is a citizen of and an adult individual doing business at the above captioned address.

9.      Defendant, Gateway Home Equity, Inc., doing business as Gateway Funding Diversified, doing business as Ivy Mortgage ("Lender" or "Gateway"), is a duly incorporated corporation under and by virtue of the laws of the Commonwealth of Pennsylvania, maintaining its principle place of business at the above captioned address.

10.     Defendant, Carl Gensib ("Gensib"), is a citizen of and an adult individual doing business as the above captioned address, at all times material acting as an agent and attorney for Multi acting as Settlement and closing Agent.

11.     Defendant, Bank of America Corporation, formerly known as Countrywide Home Loans, Inc., ("Assignee"), is a duly incorporated corporation under and by virtue of the laws of the State of North Carolina, maintaining a principal place of business at the above captioned address, at all times material acting as the assignee and subject foreclosing lender.

12.     Defendants, John Does 1-10, at all times material were and/or are agents, servants, work persons, employees and/or affiliates of the above defendants and/or are liable hereunder.

13.     At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

14.     At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter ego's, and/or employees thereof.

15.     Defendants are liable to Plaintiff, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.

      **IV.**     **Background**

16. In or around 2006, Plaintiff fell behind on his mortgage payments for 854 Greenwood Avenue, Trenton, NJ 08609 ("Premises"), due to his disability from injuries sustained while working.

17. Plaintiff applied and qualified for welfare to pay his mortgage during his disability.

18. Welfare did not immediately begin paying Plaintiff's mortgage causing Plaintiff to become delinquent and then his premises in foreclosure.

19. At this time, Plaintiff's home also required numerous repairs that Plaintiff did not have the necessary funds to carry out.

20. At all times material, Plaintiff was not living at the premises due to its uninhabitable condition.

21. After Plaintiff's home was listed for sheriff's sale, Plaintiff was contacted via letter by Multi, via Defendants' John Does, Victor Wexler ("Wexler") and Larry Blough ("Blough") employees, officers, or agents of Multi.

22. Plaintiff called Wexler in response to the letter to determine the type of help Multi could provide Plaintiff.

23. Plaintiff spoke to Wexler, who told Plaintiff that Multi would find an investor that Plaintiff would lease to for a year, the investor would be added to Plaintiff's deed, Plaintiff would make the mortgage payments to the investor, and in one (1) year the investor would be removed from the deed leaving Plaintiff solely in title.

24. The investor's responsibilities would include funding the repairs for the premises that would make it habitable, including repairing the electricity and plumbing.

25. In or around August 2006, Wexler told Plaintiff that Plaintiff had to sign an exclusivity agreement with Multi in order for Multi to begin to look for an investor.

26. Plaintiff signed the exclusivity agreement, which prevented Plaintiff from seeking other options to save his home, as Wexler had led Plaintiff to believe that this "lease-back" was the only way.

27. During Plaintiff's multiple telephone conversations with Wexler, Plaintiff advised Wexler that the premises needed approximately $30,000.00 for the repairs and sufficient funds to reinstate his mortgage.

28. Plaintiff advised Wexler that once out of foreclosure, welfare would take over his mortgage payments.

29. At all times material prior to the closing (discussed below), Wexler, Blough and Multi caused Plaintiff to believe that Plaintiff would retain ownership to the premises while an investor, Defendant, Daniels, would provide funding for one (1) year while repairs were completed.

30. Multi, Wexler and Blough, arranged for Plaintiff's Sheriff's foreclosure sale to be postponed approximately three to four times in order to conclude the above mentioned deal.

31. Wexler advised Plaintiff that during the time from the signing of the exclusivity agreement until the closing (described below), Multi was searching for an investor and contractor.

32. Upon information and belief, Multi was not using the time to search for an investor and contractor but rather used the time to place Plaintiff in a more vulnerable and desperate situation.

33. Upon information and belief, Multi has used Daniels as an investor on multiple foreclosure rescue scams, described more fully below.

34. On or about October 20, 2006, Plaintiff attended a closing with Wexler, Gensib and Daniels.

35. The paperwork presented to Plaintiff was blank.

36. When Plaintiff questioned the blank paperwork, Wexler told Plaintiff it would be filled in later with the specifics surrounding Daniels' investment and the repairs to be made.

37. Plaintiff told Wexler that Plaintiff would not sign the blank paperwork.

38. Wexler took Plaintiff aside to threaten and/or bully Plaintiff into signing the documents.

39. Wexler advised Plaintiff that this deal had to get done, as Wexler had already stopped the sheriff's sale three (3) times, and, otherwise, Plaintiff would lose his home.

40. Wexler told Plaintiff that the filled in paperwork would reflect Plaintiff receiving $16,000.00 to stop the sheriff's sale and $30,000.00 for renovations from Daniels.

41. At the time of the closing, Plaintiff had an imminently scheduled sheriff sale on the premises, scheduled for October 25, 2006.

42. Plaintiff, feeling he was backed into a corner with a Sheriff's Sale pending, signed the paperwork based on Wexler's, representations that Plaintiff would be receive funds from Daniels for repairs and be free of the pending foreclosure and sheriff's sale.

43. Plaintiff was not given an opportunity to review the documents once the documents were fully filled out.

44. At closing, Plaintiff was not given a copy of any of the documents which he signed.

45. Upon information and belief, Gensib prepared the closing documents, including the HUD-1 (settlement statement), discussed for fully below.

46. At all times material, Gensib was the settlement agent for Multi, Daniels, Gensib, and Gateway.

47. Upon information and belief, Gensib has acted as a settlement agent for Multi, Daniels, Gensib, and Gateway in other similar foreclosure rescue scams (*see,* Kaufman v. Gensib, etal (Super.Ct.NJ L-2009-08)).

48. After the closing, Plaintiff discovered that he had not leased his home for repairs but rather he had entered into a "Foreclosure Rescue Scam."

49. Multi had found a contractor to complete the repairs on the premises.

50. The contractor refused to get proper work permits prior to starting work, despite Plaintiff's multiple requests that the permits be produced.

51. Plaintiff refused to allow the contractor to work on the premises prior to applying for and receiving the proper work permits.

52. Plaintiff began to suspect that Multi was not interested in the repairs.

53. After the closing, Plaintiff discovered that the paperwork was filled in to appear as if Plaintiff sold his home to Daniels and was now required to make monthly rent payments, in the amount of $1,300.00 and Plaintiff would repurchase the premises for $191,000.00 after one (1) year.

54. Prior to this "sale," Plaintiff's monthly mortgage payments were approximately $650.00.

55. Plaintiff could not afford the monthly payments of $1,300.00 and would not have agreed to this term knowing that the "rent" would be unaffordable.

56. After the closing, Plaintiff was sent a copy of the HUD-1 and discovered that Multi, Daniels, Gensib, and Gateway included fees and charges that were neither *bona fide* nor reasonable including, but not limited to, the following:

    a. $16,000 fee for Multi;

    b. $30,000 escrowed for renovations;

    c. $23,640.47 cash to Plaintiff;

    d. $3,000.00 escrow created for a "second mortgage" that had previously been paid;

    e. $4,000.00 payment to "Real Estate Consortium";

    f. $30,505.80 payment to Multi for "other debts"

    g. $7,500.00 attorney fee; and

    h. $2,000.00 escrowed to pay off a "mortgage" payment.

57. The above fees are illegal and constitute kickbacks for the following reasons:

    a. Multi's fee was not previously agreed upon and it was therefore not *bona fide* nor reasonable;

    b. The renovations did not occur, and the money escrowed for those repairs should be returned to Plaintiff, it is believed Multi, Daniels, Gensib, and Gateway kept this money and split it amongst themselves;

    c. Plaintiff did not receive funds from the closing and it is believed that Multi, Daniels, Gensib, and Gateway kept and split this money amongst themselves;

    d. Plaintiff did not have a second mortgage on the premises and it is believed that this amount was not escrowed but split amongst Multi, Daniels, Gensib, and Gateway;

    e. Plaintiff did not have a realtor representing him so there should not have been a payment to the "Real Estate Consortium", it is believed that this payment was not

        made rather Multi, Daniels, Gensib, and Gateway split the money amongst themselves;

    f. Plaintiff did not have other debts totaling $30,505.80, it is believed that this amount was not escrowed but split amongst Multi, Daniels, Gensib, and Gateway;

    g. Plaintiff did not have an attorney at closing nor did he use an attorney's services, this amount is believed to have been split among Multi, Daniels, Gensib, and Gateway;

    h. Plaintiff does not know what the "mortgage payment" escrow was for and this money should have been given to him, it is believed that it was not escrowed but rather split amongst Multi, Daniels, Gensib, and Gateway.

58. The listing of "other debts" was done to disguise the illegal payments, believed split between Multi, Daniels, Gensib, and Gateway.

60. Upon information and belief, there is no entity known as Real Estate Consortium and the payment to this entity was a disguised payment between Multi, Daniels, Gensib, and Gateway.

61. The money supposedly held in escrow should have been in a trust account held by Gensib for Multi, Daniels, & Gateway.

62. Gensib's fee for document preparation was made without authorization from Plaintiff.

63. Upon information and belief, Multi and Gateway have used Daniels as an investor in other foreclosure rescue scams.

64. With knowledge of the foregoing, Defendant, Lender, provided the funding for Defendant's, Daniels, purchase of the premises.

65. Upon information and belief, Lender has been involved in other scams with Defendants and knew or should have known that Plaintiff was subject to a foreclosure rescue scam.

66. Lender and Assignee knew or should have known that the HUD-1 statement and thus, Truth-in-Lending Disclosures, was false and did not comply with RESPA.

67. For the foregoing abnormalities, Lender and Assignee knew or should have known that the purchase by Daniels of Plaintiff's property was irregular, void, and unenforceable.

68. Upon information and belief, Defendant, Daniels, had a contact with Defendant's, Lender, representative Defendant, John Doe.

69. The above contact ensured the above closing would proceed no matter the ability of Daniels to make payments, nor Plaintiff's revestiture.

70. Based on the facts of the transaction Plaintiff is an implied borrower from Defendant, Lender.

71. Unknown to Plaintiff, Defendant, Lender, received application and commitment fees, as well as intended interest based on the heightened loan amount.

72. As should or was know to Gateway. Defendant, Daniels, acted as a "straw purchaser" for Plaintiff for what was essentially a refinance.

73. Daniels took out a loan on Plaintiff's property.

74. Daniels did not have an intention to live in the premises, pay taxes on the premises, nor undertake any of the responsibilities of an owner.

75. At all times, Plaintiff facilitated the repairs to make the premises habitable for Plaintiff, and in all respects maintained the responsibilities of a property owner.

76. To date, no repair work on the premises has been completed despite the funds escrowed for repairs & Plaintiff's repeated requests for funds and/or contractors from Wexler..

77. Plaintiff has not received any funds from the renovation escrow.

78. Upon information and belied, Plaintiff's property was never listed at the Real Estate Consortium nor was this charge explained to Plaintiff.

79. Plaintiff never received any funds from the closing.

80. The additional escrows for mortgages were unnecessary.

81. Plaintiff had no attorney representing him.

82. Plaintiff had no "other debts" in the amount of $30,505.80.

83. Plaintiff did not receive any profits and/or proceeds from the Loan or closing.

84. The failure of Gateway, Multi, and Gensib to itemize and& disclose the payments violated RESPA, 12 U.S.C. § 2602, et seq.

85. At all times material, Plaintiff believed the agreement was to enable him to keep his long-time held intra-family home.

86. Subsequent to the above, on approximately three (3) separate occasions, Defendant, Multi, has broken into the premises causing damage, including but not limited to kicking in the door and changing Plaintiff's locks.

87. Upon information and belief, the above breaking by Defendant, Multi, were done at the request of Defendants, Lender and Daniels.

88. Upon instructions and belief, Defendant, Daniels, has failed to pay his mortgage and is currently in foreclosure.

89. The foreclosure has been commenced and prosecuted by Defendant, Lender and/or Assignee and/or at its behest.

90. Post- default, Lender sold its loan interest to Defendant, Assignee.

91. Upon information and belief, Assignee sold the premises at a sheriff's sale, which Plaintiff was only noticed of three (3) days prior to the sale by a posting on the premises.

92. Assignee should have been on notice of the TILA/HOEPA and RESPA violations on the face of the loan documents.

93. As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to: (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss and/or possible loss of the premises; (5) attorneys fees and court costs; and/or (6) such other and further injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing condition(s).

      **V.**     **Causes of Action**

94.    Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

95.    Plaintiff is a natural person provided with the right to defer payment of debts or to incur payment of debt and defer payment, and the credit offered or extended was primarily for personal, family and/or household purposes.

96.    As a matter of law, Plaintiff and Defendants are "persons."

A. Statutory

### COUNT I
**Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")**
*Plaintiff v. Lender and Assignee*

97.    At all times material, Defendants, in the ordinary course of business, extended and/or arranged for the extension of consumer credit and/or offered to extend or arrange for the extension of such credit.

98.    The Loan was a residential mortgage loan subject to Plaintiff's right of rescission described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

99.    In said loan transaction, Plaintiff did not receive the disclosures required by the Truth-In-Lending Act ("TILA"), 15 U.S.C. §1601, et. seq., and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C.F.R §226.1 et seq., including, but not limited to, notice pursuant to the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §1639(a) ("HOEPA").

100.    Defendants failed to deliver all "material" disclosures required by TILA and Regulation Z, including but not limited to:

    (a) Failing to properly and accurately disclose the "amount financed," described in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

    (b) Failing to clearly and accurately disclose the "finance charge," described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

    (c) Failing to clearly and accurately disclose the "annual percentage rate," described in and in violation of Regular Z §226.18(e) and 15 U.S.C. §1638(a)(4);

    (d)  Failing to comply with the special disclosure requirements of Regulation Z §226.32;

    (e)  Failing to timely provide each Plaintiff with two (2) copies of a Notice of his/her Rights to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

101.    Due to the violations of TILA and Regulation Z, Plaintiff has an ongoing right to rescission.

102.    The Loan was a high rate mortgage within the meaning of 15 U.S.C. §1602(aa)(1)(B), in that the total points and fees Defendants charged Plaintiff, in addition to interest, exceeded eight percent of the total loan amount or in that the APR trigger pursuant to HOEPA was met with respect to this transaction.

103.    Because the transaction met the statutory definition of a high rate mortgage, it was subject to the additional disclosure requirements imposed by the TILA amendments contained in HOEPA, 15 U.S.C. §1639(a), et seq.

104.    Defendants' failure to provide Plaintiff with an accurate and timely HOEPA disclosure(s), as required by law, constitutes a "material" disclosure violation(s), TILA, 15 U.S.C. §1602(u) (as amended), Regulation Z §226.23 (as amended).

## COUNT II
### Credit Repair Organizations Act ('CROA")
*Plaintiff v. Multi*

105.    At all times material, Plaintiff was a "consumer" as defined by 15 U.S.C & §1679(a)(1).

106.    At all times material, Defendants were a "credit repair organization" as defined by 15 U.S.C §1679(a)(3).

107.    For the reasons befor said at all times material Defendants were in violation of 15 U.S.C §1679, et seq.

## COUNT III
### Real Estate Settlement Procedures Act ("RESPA")
*Plaintiff v. Defendants*

108.    Plaintiff's loan was a federally related consumer mortgage loan as defined by RESPA, 12 U.S.C. §2602, et seq., which Defendants are in violation thereof at all times material, including but not, the pre-

paid finance charges paid by Plaintiff are believed neither properly disclosed nor *bona fide* and/or *reasonable*, thus "fee splitting," a violations(s) herein.

**COUNT IV**
**New Jersey Consumer Fraud Act (NJCFA)**
*Plaintiffs v. Defendants*

109.     At all times material, the closing(s) above described, constituted a "sale" of the aforesaid premises as that term is defined by the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1, et seq. (hereinafter "NJCFA"), which Defendants are in violation and liable therefore to Plaintiff.

**WHEREFORE**, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

   a. Recission;
   b. Termination of any security interest in Plaintiff's property which may have been created;
   c. Return of any money or property given by Plaintiff to anyone, including Defendants, in connection with the transaction;
   d. Statutory damages;
   e. Forfeiture and return of loan proceeds;
   f. Damages, including;
       i. Actual damages;
       ii. Treble damages;
       iii. Attorneys fees and expenses, and costs of suit; and
       iv. Punitive Damages.

PROCHNIAK WEISBERG, P.C.


/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
REBECCA M. STEIGER, ESQUIRE
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(TRENTON VICINAGE)**

**PROCHNIAK WEISBERG, P.C.**
MATTHEW B. WEISBERG
7 SOUTH MORTON AVE.
MORTON, PA  19070
610-690-0801

| | |
|---|---|
| Anthony Johnson : | |
| 305 Sturwood Way : | CIVIL ACTION NO.: 3:08-cv-05134 |
| Lawrenceville, NJ 08648 : | |
| : | JURY OF TWELVE (12) JURORS DEMANDED |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| Multi-Solutions, Inc., et al : | |

**CERTIFICATE OF SERVICE**

I, Matthew B. Weisberg, Esquire, hereby certify that on this 9th of February 2009, a true and correct copy of the foregoing Plaintiffs' First Amended Civil Action Complaint was served via ECF and United States Mail, first class, postage prepaid, upon the following parties, respectively:

KENNETH THOMAS ULRICH
GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES LP
300 WELSH ROAD
BUILDING 5
HORSHAM , PA 19044

Multi-Solutions, Inc.
197 Route 18 South
South Tower, Suite 3000
East Brunswick, NJ 08816

JAMES DANIELS
699 West Grand Avenue
Rahway, NJ 07065

CARL GENSIB
850-870 Route 1 North
North Brunswick, NJ 08902

PROCHNIAK WEISBERG, P.C.

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG
Attorneys for Plaintiffs