UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

Anthony Johnson          :
                         :
    v.                   :
                         :
Multi-Solutions, Inc. et al.   :   CIVIL ACTION NO.: 3:08-cv-05134

### PLAINTIFF'S RESPONSE TO DEFENDANT, GATEWAY FUNDING'S MOTION FOR SUMMARY JUDGMENT

Incorporating by reference Plaintiff's attached Memorandum of Law; Plaintiff requests this Honorable Court deny Defendant, Gateway's Motion for Summary Judgment on plaintiff's First Amended Complaint.

Plaintiff responsively avers:

1.-7.   Admitted.

8.   Denied as a conclusion of law to the extent Gateway through its employee, Joseph Zicaro, and Gateway's agent, attorney Carl Gensib, knew full well of MSI and its principals' involvement in foreclosure rescue loans, respectively Gensib Dep. 10:17-22 (Ex. "A"); Zicaro Dep. 8 (Ex. "B".

9.   Denied as a conclusion of law that plaintiff had no contact with Gateway for the reasons stated in the prior answer.

10.-12. Admitted.

13.   Denied as a conclusion of law that Gateway was not present at closing through its agent for the reasons stated in the prior answer to ¶¶8-9 herein.

14.   Admitted in part, denied in part. It is admitted plaintiff executed said deed. It is denied as a conclusion of law that the legal intent or effect was to convey title to Daniels.

15.   Denied. The Closing caused plaintiff a net loss in that his home equity was stolen by MSI.

16. Denied as stated as a conclusion of law insofar as the nature of the sale/leaseback was temporary transfer of the property to the lender supplying the foreclosure rescue loan, here Gateway, with the plaintiff's intent to later gain financing after credit repair provided by MSI to repay Gateway's loan.

17. Denied. Plaintiff's home equity paid Gateway's fees.

18. Denied. See Gensib Dep. 38-39.

19.-21. Admitted.

22. Admitted only that the document reads as stated.

23.-28. Admitted.

29. Denied. Plaintiff is without knowledge of what Gateway found in its loan file upon its initial inspection after notice of this litigation.

30. Admitted.

31. Admitted that Gensib so testified. It is denied that the defendants' intent was to help plaintiff.

32. Denied as to the legal conclusion that Plaintiff wanted to sell his home.

33. Denied. This document was not testified to by plaintiff at his deposition.

34. Denied. Gensib is an agent of Gateway.

35. Denied insofar as Gateway was aware of the nature of the transaction through its employee, Joseph Zicaro, and its agent, Carl Gensib.

WHEREFORE, Plaintiffs request this Honorable Court deny Defendant, GATEWAY's Motion to Dismiss Plaintiffs' First Amended Complaint.  To the extent this Honorable Court entertains granting in any part Defendant's Motion, Plaintiffs request oral argument.

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(TRENTON VICINAGE)**

| | |
|---|---|
| Anthony Johnson | : |
| | : |
| vi. | : |
| | : |
| Multi-Solutions, Inc. et al. | :  CIVIL ACTION NO.: 3:08-cv-05134 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT, GATEWAY FUNDING'S MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

Plaintiff, Anthony Johnson was a victim of a "foreclosure rescue scam" as well as separate wrongful deed conversion and foreclosure. Defendant and Movant, Gateway Funding, moves for summary judgment on plaintiff's First Amended Complaint for plaintiff's alleged failure to prove notice to Gateway that the sale of plaintiff's property to defendant Daniels through defendant Multi-Solutions, Inc. ("MSI") was a "sale/leaseback" transaction entitling plaintiff to TILA disclosures and N.J. CFA damages.

Plaintiff continues to aver to the contrary that Gateway is bound by the knowledge of its then employee, loan officer Joseph Zicaro, as to MSI's sale/leaseback activities and the knowledge of its agent, Closing Attorney defendant Carl Gensib, who knew of the sale/leaseback nature of the subject transaction with defendant James Daniels. Based thereon, Gateway knew that plaintiff was the intended and thus implied borrower of a foreclosure rescue loan. Based on this knowledge of Gateway of plaintiff's status as implied borrower, plaintiff was entitled to disclosures under TILA. Zicaro's testimony and documents testified to at deposition establish that he was working for MSI and Gateway and financing foreclosure rescue deals through Gateway. Furthermore, defendant Gensib's testimony establishes that he acted against his duties as closing agent and distributed the sale proceeds to defendant Multi-Solutions according to a

4

second HUD-1 document, unacknowledged by plaintiff, that he prepared for Multi-Solutions. As such, Mr. Johnson has standing to pursue his rights against Movant who is bound by the acts of its employee, Zicaro, and its agent, Gensib.

Further, plaintiff refers this court to the recent decision from the New Jersey Superior Court in One West v. Capo et al (July 19, 2010),  see Exh. A attached. In Capo, the Court held that in a foreclosure rescue scam, the mortgage is *void ab initio* even as against an innocent defendant third party lender, though the lender can have its mortgage modified to only the benefit derived from the transaction by the victim in the form of debts paid, etc.  In the case at hand, Movant is not an innocent party in that it is bound by the knowledge and fraudulent acts of its employee, Zicaro, and agent, Carl Gensib, respectively.

## II.     Undisputed Facts

1. At his deposition, Zicaro testified he worked for Gateway when he became involved with MSI to do foreclosure rescue loans:

```
21          My first question to you, sir, is:  Had you ever
22     heard of a company called Multi-Solutions, Inc.?
23        A.  Yes.
24        Q.  How have you heard of them?


 1        A.  Through a referral source that I was doing some
 2     work with.
 3        Q.  Who was that referral source?
 4        A.  Larry Blough.
 5        Q.  How had you made the acquaintance of Larry
```

```
 6   Blough?
 7      A.   Through a golf association.  We started playing
 8   golf together.  Basically, that's how it's transpired.
 9      Q.   Okay.  What was your job at the time you first
10   met Mr. Blough?
11      A.   I was a mortgage guy for -- a branch manager for
12   Gateway Funding.
13      Q.   A loan officer?
14      A.   Yes.
15      Q.   Sales?
16      A.   Yes.
17      Q.   When you met Larry Blough through this golf -by
18   golf association, what was that conversation about in
19   terms of his business?
20      A.   We talked briefly about him being involved with
21   helping clients that were in foreclosures remain in
22   their house through a lease-buyback program…
```
Zicaro Dep., p. 8

2. MSI needed Zicaro because he was a mortgage company loan officer:

```
19      Q.   Why was he coming to you to make these referrals?
20   Why wasn't he doing them himself, for example?
21      A.   He wasn't in -- he wasn't a mortgage loan
22   officer.
```
Zicaro Dep., p.12

3. Zicaro allowed the daughter of MSI's owner, defendant Victor Wexler, to sign his name to plaintiff's loan application for the subject loan:

6

```
 7      Q.  Do you know whose handwriting would have been on
 8   this exhibit that we have marked as Z-1?  Does that
 9   handwriting at all look familiar?
10      A.  The handwriting that I see there, okay, is --
11   would actually be -- Vic, a daughter, who worked forher
12   (sic) that I met a few times.  And when she wrote me a
13   note or anything, that was her handwriting.
14      Q.  Your signature is in her handwriting?
15      A.  I think so.
16      Q.  Okay.
17      A.  These two signatures are like identical.
18      Q.  You are saying that --
19      A.  Somebody -- whoever signed that name, signedthat
20   name.
21      Q.  You are saying that James Daniels' signature
22   looks similar to the signature of --
23      A.  The handwriting?  Yes.
24      Q.  -- Joseph Zicaro?

 1      A.  Absolutely.
```

Zicaro Dep., pp. 23-24.

4. Zicaro would often allow others to sign his name to mortgage loan documents:

```
 4      Q.  Have you ever had anybody sign your name to an
 5   application before?
 8      A.  Yeah.  In that case, when it's my name and not
 9   the client's, yeah, that happens a lot.
10      Q.  That's what I'm asking you.
11      A.  Yes.  Well, I'm trying to follow you, so --
```

7

```
12      Q.  Has anyone ever -- I mean, if the loan processor
13  or an underwriter signed your name to a loan
14  application, a 1003 form, then they go through the
15  process and you get paid for that after the loan
16  closes --
17      A.  Yes.
18      Q.  -- is that any problem?
19      A.  No.
```

Zicaro Dep., pp. 42-43.

### III.    Disputed Facts

1. As a matter of public record, Zicaro was a managerial employee of Gateway in January, 2006, through at least 2008 or well before and well after the subject October, 2006 loan to plaintiff by Gateway, see Zicaro's LinkedIn public internet profile:

    http://www.linkedin.com/pub/joe-zicaro/19/318/85

2. Zicaro's explanation of his relationship with MSI while at Gateway being only a business referral relationship is contradicted by his having an email address with MSI which he, in fact, used:

```
     Q.  Did you ever have an e-mail address --
16       A.  They had given me an e-mail address at one time.
17       Q.  And that contained Multi-Solutions in its domain
18   name?
19       A.  Yes, which -- I don't know.  If I had it for a
20   month or two, I used it twice or three times.
```

Zicaro Dep., 12 (see also Zicaro Dep. Ex. Z-4)

8

3. Zicaro worked for MSI in early September, 2006, as evidenced by correspondence to defendant Gensib copied to Zicaro at MSI regarding a MSI originated and Gateway financed foreclosure rescue loan transaction for N.J. homeowner Karpontinis, see Zicaro Dep. Ex. Z-4.

4. Zicaro recalled the Karpontinis related Gateway loan as an MSI foreclosure rescue deal he closed, Zicaro Dep. 10:10-19; 44:20-23.

5. An email document shows Gateway employee Mershon took over the Karpontinis deal from Zicaro to close it at Gateway eventually in September, 2006, see Zicaro Dep. Ex. Z-6.

6. Zicaro was hired by Gateway through his personal relationship with Gateway manager, Todd Mershon, see Zicaro N.T. .

IV.   Argument

   A.   **PLAINTIFF'S TILA CLAIMS**

In the instant case, Plaintiffs continue to allege violations of federal strict liability lending statutes by Gateway by way of an equitable mortgage argued to exist between plaintiffs and Gateway.

   **1. Plaintiff has Standing to Allege his TILA Claims under the Equitable Mortgage Doctrine**

Standing determines "whether the litigant is entitled to have the Court decide the merits of the dispute or of particular issues."[1]  Standing has three elements:

> First, the Plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'."  Second, there must be a causal connection between the injury and the conduct complained of – "the injury has to be fairly… trace[able] to the challenged action of the Defendant, and not… th[e] result [of] the independent action of some third party not before the Court."

---

[1] Warth v. Seldin, 422 U.S. 490, 498 (1975).

9

> Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[2]

Plaintiffs clearly plead an injury in fact by their causes of action causally related to the misconduct, which can be equitably imputed to Movant. The injury can ultimately be redressed by this Honorable Court via an award of damages and recoupment. Plaintiffs' complaint is not hypothetical and thus falls "within the zone of interests protected by the law invoked."[3] They do not address this Court for a remedy otherwise excluded by the equal representative branches.[4]

Plaintiffs have been pleaded as implied refinance borrowers and thus were entitled to Originating lender Gateway's TILA loan disclosures. Courts within this circuit have held that in order for an equitable mortgagor to show an injury under the TILA and HOEPA, "Plaintiff [mortgagor] must have been doing business with Defendant [lender]." Talley v. Deutsche Bank Trust Co., No. 07-4984, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008); Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 692 (E.D. Pa. 1973) ("It is obvious that in order for a bank to be obligated to disclose credit terms to an individual, that individual must be doing business with that bank.") In order to determine whether Plaintiff did business with Gateway, it is necessary to look at whether the alleged sale transaction is an equitable mortgage. See Rutherford Nat. Bank v. H.R. Bogle & Co., 169 A. 180, 182 (N.J.Ch. 1933) ("To dedicate property, or to agree to do so, to a particular purpose or debt, is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made"); Sundheim v. Philadelphia School District, 311 Pa. 90, 103, 166 A. 365, 370 (1933)(Where "contracting parties sufficiently indicate an intention to make some particular property . . . the security for a debt or other obligation . . . an equitable lien on the property so indicated [is created].") Consequently, courts have repeatedly found that

---

[2] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted).
[3] Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).
[4] Id.

10

sale-leaseback arrangements made to avoid foreclosure are in fact equitable mortgages. Essex Property Servs., Inc. v. Wood, 587 A.2d 1337 (N.J. Super. Ct. Law Div. 1991)("It is clear that equity looks to substance rather than form, and that a guarantor or surety who takes property or an interest therein as security for his guaranty is a mortgagee thereof in equity.").

Contrary to Gateway's superficial argument of the case facts in its motion, plaintiff had no intention of selling his home to Daniels. Rather, plaintiff gave his property as security for repayment of the Gateway loan to Daniels by paying the loan's monthly payments via lease payments to Daniels and then paying off Gateway with a new loan arranged by MSI one year after the Gateway/Daniels transaction, Johnson N.T. 16:14-17:2, 27:1-10. Daniels therefore was just an investor and not a borrower of a "purchase money mortgage" such that the loan falls outside TILA.

The facts of the instant case fulfill many of the eight (8) O'Brien[5] factors and therefore create a triable issue of fact as to the existence of an equitable mortgage between plaintiff and Movant. As to the first O'Brien factor there were numerous statements by the homeowner or representations by the purchaser indicating an intention that the homeowner continue ownership and as to the third factor, it is clear that the parties understood Plaintiff to have an option to repurchase, see Johnson Depo Exh. 8. As to the fourth factor, it was intended and Plaintiff did remain in possession of the property, see Johnson Depo Exh. 9. As to the fifth factor, Plaintiff continued to bear ownership responsibilities, including paying Daniels' mortgage payments on the home via the lease payments, see again, Johnson Depo Exh. 9. As to the sixth factor, Plaintiff, did not have legal or realtor representation. As to the seventh factor, the purchase process for the transaction was highly irregular as the home was never listed for sale in either sale transaction because of the lease/buyback arrangement described. Finally, as to the eighth factor,

---

[5] In re O'Brien, 2010 WL 251660.

Plaintiff clearly was in financial distress subject to foreclosure judgment lien paid off by the transaction.   Contrary to what is insinuated by Gateway in its motion, the O'Brien Court never dismissed the lender from the consumer's lawsuit based on the merits of such lender's defenses. Rather, the plaintiff O'Brien for unexplained reasons agreed to release that lender apparently having reached an accommodation with it to make payments to stay in the home[6].

As an additional equitable consideration in the case at hand, Gateway is bound by its actual and constructive knowledge of the nature of the transaction as a sale/leaseback foreclosure rescue rather than sale both by the actions of its employee, Joseph Zicaro, and by the actions of its agent for closing of the loan, defendant attorney Carl Gensib.

One of Gateway's managers and loan officers at the time of the disputed transaction, Zicaro was intimately involved with MSI while at Gateway as argued by plaintiff in the disputed and undisputed facts above.  Zicaro had an email address with MSI at least as early as five (5) weeks before the closing of plaintiff's transaction which Zicaro dubiously attempted to minimize as something done by MSI without his knowledge or full understanding, but which he nonetheless admitted using.  Zicaro was approached by MSI's principals solely to obtain financing sale/leaseback loans for their investors in foreclosure rescue deals. Zicaro closed at least one other MSI deal through Gateway within one (1) month of plaintiff's transaction disputed herein. Zicaro allowed the daughter of MSI's principal, felon Victor Wexler, to sign his name to loan documentation for plaintiff's loan as he routinely allowed others to sign his name to loan documentation.  Zicaro brought one of the MSI foreclosure deals for N.J. homeowner Karpontinis to Gateway for funding through Gateway manager, Todd Mershon, who recommended Zicaro to Gateway for hiring as a managerial employee.

---

[6] The O'Briens joined the New Lender as a defendant in this adversary proceeding but agreed to dismiss the complaint against the New Lender.  A consent order was entered under which the New Lender has agreed to accept monthly payments from the O'Briens.

Gateway treats as a matter of importance when Zicaro became employed by it relative to his employment with MSI when it is irrelevant to the issue of Gateway's knowledge of the foreclosure rescue deals imputed to it by Zicaro's intimate knowledge of and involvement with MSI's foreclosure rescue business.  So desperate is Gateway to disassociate itself from knowledge of MSI foreclosure rescue deals that it produced at Zicaro's deposition a sham affidavit from a Gateway Human Resources employee (Zicaro dep. Ex. Z-7). The affidavit states that Zicaro started employment with Gateway in *late* September, 2006 or after the early September, 2006 communications by Gateway to Zicaro at MSI regarding the Karpontinis foreclosure rescue deal.  Because the affidavit was not supported by any documentation, plaintiff requested of Gateway's counsel after the Zicaro deposition Zicaro's personnel file and any deal documents for MSI deals in Gateway's possession (see Ex. "C" hereto). Gateway never responded nor produced any supporting documentation. As a result, the affidavit is inadmissible in its current form.  Recently, the New Jersey Supreme Court reiterated the relevant factors that must be established by a proponent of documents pursuant to N.J.R.E. 803(c)(6). In New Jersey Div. of Youth and Fam. Servs. v. M.C. III, 201 N.J. 328 (2010), Justice Wallace, speaking for the Court, observed:

> Under the business records exception to the hearsay rule, a party seeking to admit a hearsay statement pursuant to this rule must demonstrate that "the writing [was] made in the regular course of business," the writing was "prepared within a short time of the act, condition or event being described," and "the source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence." State v. Matulewicz, 101 N.J. 27, 29 (1985) (citation omitted).
> [(Id. at 347).]

The affidavit submitted by Gateway falls far short of meeting this threshold by not sufficiently showing the source of its information. N.J.R.E. 1002 mandates that, "To prove the content of a writing or photograph, the original writing or photograph is required except as otherwise

13

provided in these rules or by statute." Here, reference is made to "employment records", presumably computer data, yet there is no record before the Court by Gateway's motion or otherwise of any copies of such records to support the attestations of Gateway's HR affiant. See N.J.R.E. 1001(c) and Fed. Ev. Rule 1001(c) (requiring "original" computer data in the form of printouts or other readable output).

### B. GATEWAY IS VICARIOUSLY LIABLE FOR THE ACTS OF ITS AGENT DEFENDANT GENSIB IN VIOLATION OF NJ CFA

That defendant Carl Gensib served as Gateway Funding's settlement agent is plain. To establish agency, the parties need not have a formal agency agreement, as the law will look to the totality of the circumstances to determine whether an agency relationship exists. Sears Mortgage Corp. v. Rose, 134 N.J. 326, 338 (1993). An agency relationship can be implied according to the nature or extent or the function to be performed, and the specific circumstances of the case. *Id*. In Sears Mortgage Corp. v. Rose, the New Jersey Supreme Court held that even where the closing agent was actually the borrower's attorney, in his capacity as settlement agent he functions as an agent for the title insurer and its insured. Sears Mortg. Corp. v. Rose, 134 N.J. at 342-343. In the instant case, closing agent Gensib was the agent for his title underwriter's insured under the lender policy, Gateway. As such, Gateway's settlement agent Gensib was directly involved in the fraud perpetrated upon Mr. Johnson. Specifically, Gensib prepared two (2) settlement statements, one to get the sale transaction through with Gateway which showed a distribution to seller plaintiff of $88,000, N.T. p. 38, Gensib Exh. 5, and another HUD1 which *may* have been submitted to the lender Gateway prepared for the sale/leaseback transaction between plaintiff and defendants Multi-Solutions, Wexler and Blough (N.T. 38-39). Gensib also prepared a separate document which left the cash disbursement to plaintiff "to be determined",

14

Gensib Exh. 4, N.T. 36. Gensib then distributed nearly all the loan/sale proceeds to Multi-Solutions, while disbursing only several thousand to plaintiff after the closing. Gensib admits a breach of professional duty by his conduct in producing two (2) HUD1s, Gensib N.T. 85. Multi-Solutions and Wexler may have been involved in other sale leaseback transactions with Gateway, Gensib N.T. 71.

2.  **Plaintiff's TILA Claims are Timely Brought**

As Gateway correctly notes, Plaintiff filed his complaint within two (2) years of the transaction. When a lender's notices are <u>accurate</u> and complete, an obligor has three (3) days to rescind the loan, and one (1) year thereafter to seek judicial intervention. However, when a lender fails to make accurate disclosures, TILA grants the right of rescission for a period of three (3) years.[7] 15 U.S.C. §1635(f). Here, Plaintiff did not receive any notices. At the very least, Plaintiff is entitled to the three (3) year rescission period granted by 15 U.S.C. §1635(f).

Plaintiff rescinded timely by filing of the complaint within three (3) years of the original transaction thereby falling within the 3 year rescission period. The filing of a complaint for rescission has been held sufficient as a "written communication" of the consumer's exercise of rescission rights. <u>Jones v. Saxon Mortgage, Inc.</u>, 161 F.2d 2 (table), 1998 WL 614150 (4th Cir. 1998); <u>Taylor v. Domestic Remodeling, Inc.</u>, 97 E3d 96 (5th Cir. 1996); <u>Pulphus v. Sullivan</u>, 2003 WL 1964333, at *16 (N.D. Apr, 28, 2003); <u>McIntosh v. Irwin Union Bank & Trust Co.</u>, 215 F.R.D. 26 (D. Mass. 2003); <u>Eveland v. Star Bank</u>, 976 E Supp. 721 (S.D. Ohio 1997); <u>Elliott v. ITT Corp.</u>, 764 E Supp. 102 (N.D. Ill. 1991).

---

[7] And then one (1) year thereafter to seek file suit. 15 U.S.C. §1640(e).

An assignee such as Bank of America is automatically liable for rescission due to a creditor's violation without regard to due diligence as to the documents or holder in due course issues pursuant to 15 U.S.C. §1641 (c).

WHEREFORE, Plaintiffs request this Honorable Court deny Defendant, Gateway's Motion to Dismiss Plaintiffs' First Amended Complaint.  To the extent this Honorable Court entertains granting in any part Defendant's Motion, <u>Plaintiff requests oral argument</u>.

                                        <u>/s/ Matthew B. Weisberg, Esquire</u>
                                        WEISBERG LAW, P.C.
                                        Attorneys for Plaintiff

<u>Certificate of Service</u>

  I, Matthew B. Weisberg, counsel for Plaintiff, hereby certify that I filed the foregoing brief in opposition to defendant Gateway'S Motion For Summary Judgment electronically and that all parties have been served via ECF email.

Dated: May 2, 2011        <u>/s/ Robert P. Cocco</u>