NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Anthony JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MULTI-SOLUTIONS, INC.; Victor WEXLER and Larry BLOUGH, d/b/a MULTI-SOLUTIONS; James DANIELS; GATEWAY HOME EQUITY, INC. d/b/a GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES d/b/a IVY MORTGAGE.; Carl GENSIB; and BANK OF AMERICA f/k/a COUNTRYWIDE HOME LOANS, INC.,<br><br>    Defendants. | Civil No. 08-5134 (AET)<br><br>**OPINION** |

THOMPSON, U.S.D.J.

I.   INTRODUCTION

This matter has come before the Court upon the Motions for Summary Judgment filed by Defendants Countrywide Home Loans, Inc. ("Countrywide") and Gateway Home Equity, Inc. ("Gateway") [docket # 91, 92]. The Court has decided the motions upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, the Defendants' motions are granted.

II. BACKGROUND

This case involves a sale-leaseback agreement entered into by Plaintiff Anthony Johnson and Multi-Solutions, Inc. Plaintiff now claims that this transaction was a foreclosure rescue scam. He therefore seeks to have the property restored to his ownership and requests damages for

-1-

various statutory claims.

In 2004, Plaintiff inherited a residence located at 854 Greenwood Avenue, Trenton, NJ 08609 (the "Property"). (Gateway Br. in Supp. Ex. A, Anthony Johnson Dep. 9:15-23, 10:24-11:2) [91]. The same year, Plaintiff obtained a $60,000 mortgage on the property through Ameriquest Mortgage Company ("AMC"). (*Id.* at 11:9-17.) In 2006, Plaintiff defaulted on his mortgage payments. (*Id.* at 52:4-8.) After the Property was listed for sheriff's sale, Victor Wexler and Larry Blough from Multi-Solutions Inc. ("MSI") sent Plaintiff a letter offering to help him avoid foreclosure. (*Id.* at 13:3-22.) Plaintiff signed an "exclusivity agreement" indicating that he would deal solely with MSI in attempting to avoid foreclosure. (*Id.* at 15:10-20.) Plaintiff apparently understood MSI's solution to be a "lease/buy-back," whereby he would add an investor to his deed, pay that investor $1,300 monthly mortgage payments for one year, take the investor off the deed at the end of the year, and proceed with a new mortgage in Plaintiff's name alone. (*Id.* at 16:16-17:2.) However, the actual agreements signed by Plaintiff resulted in Plaintiff's wholesale transfer of the property and Plaintiff's obligation to pay monthly rent to the new owner. (*Id.* at 28:20-24); (*see also* Johnson Dep. Ex. 9). Specifically, Plaintiff deeded the Property to investor James Daniels, (Johnson Dep. Ex. 2, Deed), and Daniels then leased the Property back to Plaintiff, (*see* Johnson Dep. Ex. 9, Letter Agreement Re: Lease of Property – 854 Greenwood Avenue, Trenton, NJ 08609 ("Lease")). In carrying out this transaction, closing agent Carl Gensib produced two HUD-1 settlement statements: one fraudulently indicating that Plaintiff had received $88,148.67 as proceeds of sale,[1] (*see* Johnson Dep. Ex. 3, HUD-1 Uniform Settlement Statement), and the other memorializing the "true intent of the parties"—namely, that Daniels would use the sale proceeds to pay off Plaintiff's previous mortgage, (Johnson Dep. 33:6-34:5); (*see also* Johnson Dep. Ex. 9, Lease). Daniels executed a new mortgage on the Property in

---

[1]  Gensib admitted in his deposition that he did not issue Plaintiff the proceeds of sale amount and that Plaintiff did not otherwise receive this money per the sale-leaseback arrangement. (Gateway Br. in Supp. Ex. C, Carl Gensib Dep. 66:18-67:11.)

favor of Gateway.  In connection with the mortgage, Gateway received the fraudulent HUD-1 settlement statement.  (*See* Joseph Alvini Aff. ¶ 2.)  Gateway's loan file does not contain any record of a sale-leaseback between Plaintiff and Daniels, nor does it contain the true and accurate HUD-1 settlement statement.  (*See id.* at ¶ 6.)  Gateway later assigned the loan to Countrywide.  After Daniels defaulted, Countrywide scheduled foreclosure proceedings and a sheriff's sale. (William T. Marshall Decl. Ex. 8, Laura Scurko Decl. ¶ 3.)  Countrywide assigned its bid for the sheriff's sale to the Federal National Mortgage Association ("Fannie Mae"), which bid successfully and thereby obtained title to the property.  (*Id*. at ¶ 5.)

On October 20, 2008, Plaintiff filed a Complaint [1] against Defendants MSI, Daniels, Gateway, and Gensib, alleging claims under the Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), the Credit Repair Organizations Act ("CROA"), the Real Estate Settlement Procedures Act ("RESPA"), and the New Jersey Consumer Fraud Act ("NJCFA").  Plaintiff later filed the First Amended Complaint [17] on February 9, 2009.  Defendant Gateway filed a motion to dismiss Plaintiff's First Amended Complaint, which we denied because Defendant had failed to address Plaintiff's "implied borrower" theory or the equitable tolling issue.  (*See* Mem. & Order, July 20, 2009, at 3–5) [31].  In the same order, we granted Plaintiff leave to amend to clarify certain causes of action and to add Countrywide as a Defendant, given that Countrywide is the assignee of the Daniels-Gateway loan.  (*Id.* at 5.) Plaintiff subsequently filed the Second Amended Complaint ("SAC") on October 15, 2009 [40]. Like the previous complaints, Plaintiff's SAC brings claims based on TILA, HOEPA, RESPA, and the NJCFA.[2]  (SAC ¶¶ 97–109.)  Defendants Countrywide and Gateway now move for summary judgment as to all claims against them [91, 92].

---

[2]  Plaintiff's CROA claim is pleaded solely against MSI, (*see* SAC ¶¶ 105–107), and therefore we do not address it in this Opinion.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49.

### B. Summary Judgment as to Gateway

#### 1. Standing Under TILA and HOEPA

In order to assert a claim under TILA and HOEPA, Plaintiff must be a "consumer of credit." *Johnson v. Novastar Mortg., Inc.*, 698 F. Supp. 2d 463, 468 (D.N.J. 2010); *see* 15 U.S.C. § 1601(a) (stating that TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices"); *id.* § 1602(aa) (stating that HOEPA governs "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit

plan . . . ."). Specifically, in order to show an injury under TILA and HOEPA, "'Plaintiff must have been doing business with Defendant.'" *Novastar*, 698 F. Supp. at 468 (quoting *Talley v. Deutsche Bank Trust Co.*, No. 07-4984, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008)). Where the parties have entered into a sale-leaseback arrangement rather than a formal credit agreement, courts have characterized the transaction as an equitable mortgage in order to apply TILA or HOEPA. *See, e.g.*, *id.* at 468–470; *Scott v. Demarco REI, Inc.*, No. 10-3822, 2011 WL 1327873, at *3 (D.N.J. Apr. 6, 2011); *In re O'Brien*, 423 B.R. 477, 489 (Bankr. D.N.J. 2010).

In this case, however, we need not engage in a lengthy analysis of whether the sale-leaseback constituted an equitable mortgage. Even assuming *arguendo* that an equitable mortgage existed between Plaintiff and Daniels, there was no transaction between Plaintiff and Gateway. *See Scott*, 2011 WL 1327873, at *3. Plaintiff conceded in his deposition testimony that he never borrowed any money from Gateway. (Johnson Dep. 132:10-16 ("Q: . . . At the closing on October 20th, 2006, did you borrow any money from Gateway Funding? A: Never. I never even— Q: Just answer my question. A: No.").) The only party to whom Gateway loaned money in this case was Daniels, the investor to whom Plaintiff had transferred the Property. (*See* Alvini Aff. ¶ 2.) Because Plaintiff was not a party to the mortgage agreement between Daniels and Gateway, Plaintiff cannot maintain TILA or HOEPA claims based on that agreement, and he therefore fails to qualify as a "consumer of credit."

Plaintiff asserts that Gateway is nonetheless subject to TILA and HOEPA because it had constructive knowledge that Plaintiff was the "intended and thus implied borrower" through its employee Joseph Zicaro, a loan officer who was aware of MSI's foreclosure rescue business. (Mem. in Opp'n to Gateway's Mot. for Summ. J. 4, 12–13) [94]. Although this district has not addressed whether agency principles apply to TILA claims, we will presume that agency principles do apply in light of TILA's broad construction as a remedial statute, *see Roberts v.*

*Fleet Bank*, 342 F.3d 260, 266 (3d Cir. 2003), as well as the fact that other districts have found that these principles do apply. *See, e.g.*, *Consumer Solutions REO, LLC v. Hillery*, No. 08-4357, 2010 WL 1222739, at *4 (N.D. Cal. Mar. 24, 2010); *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 753 (E.D. Va. 2009); *In re Bumpers*, No. 03-111, 2003 WL 22119929, at *7–9 (N.D. Ill. Sept. 11, 2003). However, even applying agency principles, we are unable to conclude that Gateway had constructive knowledge of the specific facts suggested by Plaintiff.

The Third Circuit has adopted the Restatement (Third) of Agency ("Restatement") in determining whether to impute an agent's knowledge of particular facts to the agent's principal. *See Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 106 (3d Cir. 2009). Under the Restatement, "[t]he scope of an agent's duties delimits the content of knowledge imputed to the principal." Restatement § 5.03 cmt. b. Specifically, "a corporation is not charged with the legal consequences of an employee's knowledge of a fact that lies outside the scope of the employee's duties to the corporation." *Huston*, 568 F.3d at 107 (citing Restatement § 503 cmt. c). Furthermore, even if the fact known to the employee lies within the scope of that employee's duties, the employee's knowledge is not imputed to the employer unless it is also "material—i.e. important or significant—to the employee's duties to the employer." *Id.* (citing Restatement (Second) of Agency § 272).

Gateway has failed to point to any evidence regarding the scope of Zicaro's duties as a Gateway employee. Zicaro's deposition testimony simply indicates that his title was "branch manager" and that he was a "mortgage loan officer." (Zicaro Dep. 19:4-6; 11:19-22.) Without knowing Zicaro's precise duties, we cannot say with certainty that Zicaro's knowledge that individuals referred to him by MSI had separately entered into sale-leasebacks would be outside the scope of his duties or immaterial to those duties. However, even if we were to impute to Gateway knowledge that MSI was involved with sale-leasebacks, there is no record evidence that

Zicaro or anyone else knew that MSI was involved with *this particular sale-leaseback* between Plaintiff and Daniels. Indeed, Zicaro's deposition testimony suggests that he did not know about the sale-leaseback entered into between Plaintiff and Daniels or even the mortgage agreement entered into between Daniels and Gateway. (*Id.* at 9:21-24 (stating "I don't remember Anthony Johnson as a client of mine")); (*id.* at 24:19-25:1 ("Q: To back up, have you, to the best of your recollection, ever been involved in a transaction with either a James Daniels or an Anthony Johnson?  A: Not that I remember.")); (*id.* at 43:24-44:5 ("Q: Did you ever prepare any sale-leaseback agreements for James Daniels?  A: No.")). Zicaro indicated in his deposition testimony that he only recalled working on one foreclosure rescue transaction, which was for an individual named Karpontinis. (*Id.* at 48:5-10.) Although Zicaro's signature appears on Daniels's loan application,[3] Zicaro stated in his deposition testimony that this was not actually his signature and conjectured that it was forged by the daughter of MSI's principal, Victor Wexler, (*id.* at 21:18-23, 23:7-24:1). But even assuming that Zicaro did sign Daniels's loan application, this evidence demonstrates that Zicaro knew merely of Daniels's mortgage, not Daniels's previous sale-leaseback agreement with Plaintiff. In short, Gateway's constructive knowledge that MSI was involved in the sale-leaseback business could not amount to constructive knowledge that Plaintiff and Daniels had entered into a sale-leaseback prior to the Daniels-Gateway mortgage agreement. For this reason, we cannot subject Gateway to TILA and HOEPA liability under an "implied borrower" theory that Gateway had constructive knowledge of the sale-leaseback.

   Having found that Plaintiff lacks standing to sue Gateway under TILA and HOEPA, we need not address Gateway's arguments that purchase-money mortgages do not qualify for rescission under TILA or HOEPA and that Plaintiff's claims are barred by the statute of

---

[3] Plaintiff's opposition brief states that "Zicaro allowed the daughter of MSI's principal, felon Victor Wexler, to sign his name to loan documentation for *plaintiff's* loan." (Mem. in Opp'n to Gateway's Mot. for Summ. J. 12 (emphasis added).) However, since Plaintiff never applied for a mortgage loan, we assume Plaintiff meant to refer to *Daniels's* loan application.

limitations. (Gateway Br. in Supp. 6–7, 9). Thus, we will grant summary judgment in favor of Gateway on the TILA and HOEPA claims.

### 2. RESPA Claim

RESPA requires disclosure of fees and costs involved in residential real estate transactions in order to prevent "kickbacks or referral fees" and reduce escrow amounts. *See* 12 U.S.C. § 2601. Here, Johnson has admitted in his deposition testimony that Gateway did not charge him any fees. (Johnson Dep. 136:3-137:3.) Thus, we will grant summary judgment in favor of Gateway on the RESPA claim.

### 3. Vicarious Liability Under NJCFA

To state a NJCFA claim, a plaintiff must show "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Ass'n v. Woodmont Builders*, 655 F. Supp. 2d 473, 503 (D.N.J. 2010) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (2009)).

Plaintiff claims that Gateway should be held vicariously liable under the NJCFA for the unlawful conduct of Carl Gensib, the closing agent on the sale-leaseback transaction. (Mem. in Opp'n to Gateway's Mot. for Summ. J. 14.) Gateway asserts that it is not vicariously liable because Gensib, as an attorney, was an independent contractor rather than an employee. (Reply Br. 18 (citing *Baldasarre v. Butler*, 625 A.2d 458, 465 (N.J. 1993).) However, the parties' dispute over whether Gensib was an employee or an independent contractor appears to overlook the antecedent question of whether Gensib was even working for Gateway. Gensib stated in his deposition that, as the closing agent, he represented the "buyer"—in this case, Daniels. (*See* Gensib Dep. 6:19-24 ("Q: . . . What was your position with regard to the Johnson/Daniels transaction? What was your role? A: I represented the buyer in the closing. Settlement agent.").) Gensib further stated that he did not know whether anyone from Gateway was present at the

closings, which presumably he would have known if he was Gateway's attorney. (*Id.* at 64:13-17.) Because there is no evidence that Gensib had any relationship with Gateway, we cannot find Gateway vicariously liable for Gensib's actions.

Plaintiff asks this Court to apply *Sears Mortgage Corporation v. Rose*, a case in which the New Jersey Supreme Court held a title insurance company liable for the intentional, wrongful acts committed by an attorney who was retained by the purchaser of the land. (*See* Mem. in Opp'n 14 (citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 84 (N.J. 1993)).) However, *Sears* involved a practice unique to northern New Jersey whereby title insurers do not use their own title agents to supervise real-estate closings and instead rely on the purchaser's attorney to perform the functions of a title agent. *See Sears*, 634 A.2d at 81. The present case is not analogous. Gateway had no interest in the sale-leaseback between Johnson and Daniels. And Gateway cannot be said to have relied on Gensib to serve its interests with respect to its mortgage agreement with Daniels, given that Gensib was representing Daniels.

Thus, absent any agency relationship, we must dismiss the NJCFA claim against Gateway.

### C. Summary Judgment as to Countrywide

#### 1. TILA, HOEPA, and RESPA Claims

As stated above, Plaintiff lacks standing to sue Gateway because Plaintiff did not engage in any credit transaction or equitable mortgage with Gateway, and Plaintiff also cannot rely upon an "implied borrower" theory based on constructive knowledge. Countrywide is merely the assignee of the mortgage that Daniels granted Gateway. Accordingly, insofar as Plaintiff's TILA, HOEPA and RESPA claims fail against Gateway, they must also fail against Countrywide. *See Scott v. Demarco REI, Inc.*, 2011 WL 1327873 at *4 (finding that "because TILA and HOEPA claims may not be brought against Gateway, they also may not be brought against Chase as an assignee" (citing 15 U.S.C. § 1461(a)).

### 2. NJCFA Claim

Plaintiff concedes dismissal of the NJCFA claim against Countrywide.  (*See* Mem. in Opp'n to Bank of Am.'s Mot. for Summ. J. 4) [96].  Accordingly, we will grant summary judgment in favor of Countrywide on this claim.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, the Court grants the motions for summary judgment filed by Defendant Gateway and Defendant Countrywide.  An appropriate order will follow.

                                                                 */s/ Anne E. Thompson*
                                                               ANNE E. THOMPSON, U.S.D.J.

Date:            8/22/2011